22393 Good morning your honors. My name is Blake Abbott. I represent the appellant James Hoffman in this matter. Appellant respectfully requests that this court reverse the district court's order dismissing appellant's claims prematurely. The allegations contained in appellant's complaint are clear. Appellant alleges that he and other similarly situated students entered into contracts for on-campus education at Long Island University during the spring 2020 semester. What contract are you referring to? The contract for on-campus education during the spring 2020 semester. And the terms of that contract are set forth in the complaint in the appendix starting at page 24 through 27. Specifically where we outline the publications, circulars, handbooks, and bulletins that we refer to that New York law permits that we base our implied contract allegations upon. So you were talking implied contract, right? That's correct, your honor. Doesn't New York implied contract, to the extent an implied contract is created by a university's bulletins and circulars and so forth, is the law clear that there has to be a specific promise of in-person education? Or a specific promise in the implied contract for it to be enforced? That is true, your honor. So where is then the specific promise of in-person education that has to underline your implied contract claim? The specific promises are contained in the sections before cited to in paragraph 75, 76. Read them to me. Read the language that you think constitutes a specific promise. Sure. Starting at paragraph 75, it says, quote, LIU Brooklyn offers the opportunity to every student all in the safest campus of New York City. And also LIU Post offers everything from a world-class faculty and unique experiential opportunities, that's paragraph 76. And later in paragraph 77, Long Island promises students a unique advantage studying at the Brooklyn campus. Now compare those allegations to- None of that language you read to me contains a specific promise of in-person education. Respectfully, your honor, I disagree. And I think that what's important is that it's not just one statement read in isolation. As New York law has noted that it's actually an amalgamation of a variety of documents that comprise the terms of the contract. If you've got anything else that talks about a specific, that you think constitutes a specific promise, please bring it to my attention. Sure. Additionally, in our complaint, we cite to other things that constitute a sufficiently specific promise under New York law. We cite to the course registration portal in which students can specifically select to enroll in in-person classes. We also cite to other things such as the handbook in which they describe things as in-person. We also cite to course of dealings between the parties where, as the district court recognized, during the spring 2020 semester, the eight weeks preceding the transition to online education, it was business as usual. And as expected, people attended classes on campus. So all of those, all that information- But weren't there options for remote education? There are some courses, at least, that could be taken either way, right? And your client opted for the in-class version rather than the online version? That's correct, Your Honor. And was there a difference in price? In other words, if I opted for the remote version of a course, did I get a discount in my tuition? To this point, Your Honor, there is no indication that there is a price differential between the two. However, discovery down the road could- You don't have a way of knowing that. Yeah, we don't know at this point in time. And I thought that an important thing to- Wait, I'm sorry. You don't know what? You don't know whether there's a difference between the cost of in-person and the cost of remote education? We don't know if there is a difference between- As far as we know, they are the same price. But we don't know if discovery could further reveal that they are priced differently at some point in time. What does that mean? I have no- The college is going to tell you what the costs are, right? That's correct, Your Honor. And so in framing the complaint, did you make an inquiry? Did you make a reasonable inquiry into whether this difference existed? That's right, Your Honor. And based upon what we found, there was no differences. No differences? Yes. Why isn't Long Island University's broad disclaimer giving them the ability to change program offerings, schedules, any other phase of the school activity? Why isn't that part of your implied contract? The disclaimer language cited to you by the court could be a portion of the contract that comprises the relationship between the two. Is it part of your implied contract or is it something that is not incorporated in your implied contract? It would be incorporated because the bulletins- Part of the implied contract? That's right. But what's important- So why doesn't that permit NYU to go- I mean Long Island University to go to in-person learning? Because it wasn't specifically disclaimed in their disclaimers. The disclaimers, as they are read on their face and as they should be construed against the drafter, permit them to affect changes in curriculum and other phases of the school at any time. So your position is that this is not broad enough, this language is not broad enough to encompass a change from in-person to online education? That's correct, Your Honor. Are you alleging that Long Island University's transition to virtual learning was viewed by Long Island University as a money-making opportunity? No, Your Honor. We simply allege that- It's required by law, right? I think that's correct, Your Honor. There were governmental orders that said that they had to close on-campus facilities and then also that they could continue classes online. However, this case is simply we pay for one product and we receive the other. Notwithstanding that they would have had to, in the face of mandates, potentially shut down the campus or transition to online. Does New York have any doctrine on impossibility of performance? In other words, if I contract with FedEx to deliver something the next day and there's a mammoth blizzard and what I sent doesn't arrive for a couple of days because the trucks can't hit the road, would they have breached their contract with me under New York law? Assuming that the contract, whatever the bill of lading or the thing I signed to put my letter in their hands doesn't have such a disclaimer, does New York have any doctrine about such things? New York does recognize that. However, even if they did- even if it was found that it was impossible or impractical for them to perform under the contract, you would still be entitled to restitution of the monies that you paid for. So it's not that they're not unexcused because of impossibility. It's that they elected to still retain the money despite the fact that they didn't perform under the contract. Which sort of leads me to the force majeure clause contained within their disclaimer. Well, but how do- well, all right. I guess I'm just thinking about questions of damages. Never mind. Go ahead. I see my time has run. Go ahead. On the issue of the force majeure clause here, it's important, just like the disclaimer, to be read against the drafter. Force majeure clauses are narrowly construed. Here the force majeure clause states that Long Island purports to assume no liability for interruption of classes or other instructional activities due to fire, flood, strike, war, or other force majeure. And this force majeure clause is inapplicable for multiple reasons. Because first, it only purports to relieve it of Long Island of liability for interruptions of classes and other instructional activities. Both parties seem to- So if you didn't have any classes at all, they don't owe you anything. But if they give you a remote option, then you get a 50% or X% discount on what you got? Potentially, Your Honor. And that all depends on whether or not the COVID pandemic would fall into the broad catch-all provision at the end of the force majeure that says or other force majeure. But essentially, Long Island had a choice during the spring 2020 semester. It could have ceased instruction and hid behind its potentially enforceable force majeure clause. Or it could have assumed liability for the provision of the alternative method of instruction. It can't do both. In other words, you can't use a force majeure clause to rewrite the material terms of an existing contract. You can only use it to shield yourself from liability for non-performance under that contract. Are you aware, Mr. Abbott, that there were prior cases before this court, not this panel, but other panels that largely, if not entirely, raised the same questions? The question as to force majeure? The general question is whether you've got a claim here under your law. Yes, I am aware. Okay. Thank you. Just before you sit down, is it your position that Long Island University did or did not incur substantial other expenses in terms of complying with COVID restrictions? I don't believe that we take a position on that. Sorry? I don't believe we take a position on that in our complaint. Weren't you required under Rule 11 to make an inquiry into that? Yes, Your Honor, we did. So what did your inquiry show? What it showed is that there was a closure to campus and that presumably there was some sort of a savings based upon the maintenance of those campuses. And that's part of the basis of the lawsuit here. Now, we don't have the benefit of this. Did your – this inquiry that you now concede, you may show us that the – show you anything about whether the transition to remote learning required investment in new kinds of equipment, training personnel, new infrastructure to be sure that personnel and students who had to – still had to interact were safe and so that sort of thing? Your Honor, I think that it's very possible those things could have happened and likely did happen, but that would not be dispositive of the contract claim in this case. The contract claim is that we paid for one thing and received another. That Long Island took on additional expenses in providing an alternative, not bargain for product, would not be dispositive of the contract claims in this case. And with that, I'll – Mr. Sousa, time for rebuttal. Thank you. Mr. Fellowes. Good morning, Your Honor. Jonathan Fellows, Bonchanic and King for Long Island University. May it please the Court. There are things missing from this complaint, as the Court in its questions to my opponent has already discerned. There is no allegation in the complaint that instruction did not continue in Mr. Hoffman's chosen courses. Tuition is payment for instruction. Instruction continued. There is no breach alleged in this complaint. Your Honor, what the New York Court of Appeals and many, many federal cases following the New York Court of Appeals, including this Court's decisions, have said is the implied contract between a student and the university is what is specifically promised in the bulletin. It's not in any amalgamation of anything the university has ever said to recruit students. It's what's in the official bulletin. The official bulletin is in the appendix. It's in the record. Did you say that we've said that as a Court? In Papalino, Your Honor, and in other federal court cases. It's made clear that the implied contract must be based on a specific promise in the school's bulletin catalog circular. It's not whatever the school has said at any time. It's what's in the official regulations. And the bulletin is in the record. It's part of the appendix. And there's no quote, and Your Honor asked my opponent, quote, what you're relying on. There is no quote in the complaint from the bulletin because there is no specific promise that all instruction will always be in person, on campus, in the bulletin. And that's the beginning and the end of this case under New York law. Your Honor, what's also missing from this complaint is any allegation that Mr. Hoffman didn't receive any service for fee that is promised in the bulletin. There is not, and this is what Judge Kogan ruled, is there's nothing in your complaint that says, what is the university fee for and what did you not get? Because there isn't anything in the complaint. There's nothing in the complaint whatsoever about Mr. Hoffman's experience during the few weeks of the spring 2020 term in which LIU had to close its campus. And, Your Honor, yes. You said, you said Papalino or Paladino? I think I mispronounced it. Okay, Your Honor. It's Albany School of Pharmacy is the defendant. It's, sorry, I did not brief, Your Honor. Okay. And numerous federal courts have repeatedly said what Judge Parker said in his first questions to my opponent is, you have to have a specific promise in the bulletin. Not some recruiting statement that said Brooklyn is really cool. Because Brooklyn is cool. And it remained cool during the pandemic. Yeah, but it would get less cool at some point. Well, Judge Kogan questioned how cool Brooklyn is, but. It's getting pretty fancy, pretty fancy. I don't mind that at all, but for the record. In terms of your cases, the confusion is understandable. There's Papalino, which is our case, the Albany School of Pharmacy. And there's Paladino against Adelphi, which is a Second Department case. Your Honor, it is Papalino, the Second Circuit case, which followed. And many New York federal court cases have followed the Court of Appeals prescription that we only. It's a little difficult to grasp at first, because it's an implied contract. But the implied contract must be based on a specific promise in the university's official publications. And that's what's missing here. And, Your Honor, I would like to turn to the. But official publications, that's very different than the bulletin, right? And aren't some of the due process cases in student discipline looking to a student handbook or something of that sort? But I guess you're saying advertising brochures with pretty pictures is not the same thing as an official. Your Honor, a disciplinary process outlined in a student handbook, I would state, is similar to what I say is LIU's bulletin, which is in the record, which is its official academic program for the 2019-2020 academic year. I would like to address the force majeure clause in the first page of the bulletin, which first has a paragraph that says, remember students, LIU is subject to New York State regulation. We closed the campus because the governor of New York ordered us to. Now, force majeure means something that's outside your control. This was outside your control. This court has already ruled that the pandemic presented a force majeure situation. Now, we had a force majeure, and I can't imagine language more clear that LIU reserved the right to change instruction than what's in this clause. And we reserved, we said, we are not expressing, not assuming any liability for tuition and fees. And you couldn't be more clear. My opponent says this doesn't apply. It clearly applies. And I have been here on other tuition cases, as has Mr. Abbott. This is the clearest force majeure disclaimer in any catalog I've seen in several cases. LIU wrote this bulletin to make sure that this kind of claim wasn't going to happen. Tuition is payment for instruction. That's the dictionary definition. Judge McMahon followed that in the NYU case. It says payment for instruction. There is no allegation that instruction didn't continue. And I take somewhat offense to, in the first page of their brief, they state LIU experienced a windfall. And questions were posed to Mr. Abbott this morning about that. LIU did not experience a windfall. We kept paying our faculty. We didn't have savings because of the pandemic. We didn't lay off our faculty. They kept providing the instruction to Mr. Hoffman and the other LIU students. We kept the university running. And we incurred many, many extra costs to comply with needs of the pandemic. And yet provided instruction. Mr. Hoffman's courses were concluded. He received credits toward his LIU degree. Is he still enrolled? Has he graduated? I believe he has now graduated, Your Honor. In the record is his transcript for that semester. So the record doesn't show whether he's making, oh, let me ask your friend on the other side whether he's making progress toward his degree. The point, Your Honor, is he made progress in the last half of March, April, and May of 2020. And those were the only months LIU was closed down? Correct. Well, those are the only months that issue in the complaint, Your Honor. Okay. All right. Now, Your Honor, there has been reliance on cases from other circuits. And in each of those cases, the other circuits said, we're going to look at every publication. We're going to look at historic custom and practice. New York has refused to look at it. It's under D.C. law, for example. For example, the D.C. Circuit and the Seventh Circuit have basically said, we're going to look at other publications, and we're going to look at custom. And that's what the Delaware case that plaintiff relies on said. We're going to look at custom and practice. The cases on implied contracts between the university and the student have specifically said, we're not going to enforce custom. Universities are steeped in tradition and custom. If we start saying we're going to enforce legally every tradition and custom at LIU or any other institution, you're going to have a lot of cases, Your Honor. And you're going to have courts running universities. And that's what the New York courts have said. We're not going to run these universities. So those other circuit cases were presumably based on other states' laws. Exactly, Your Honor. Federal law. Well, the Seventh Circuit was applying Illinois law. And the D.C. Circuit was applying the law of the District of Columbia, involving a school in the District of Columbia and a school in Illinois. And that law- The D.C. Circuit involved, if memory serves me correctly, I think it was George Washington, where they had a separate fee schedule for online courses as opposed to in-person courses. And that's what triggered the decision there. We have nothing like that here. Your Honor, there are some courts that have relied on the fact that a university published a different fee structure for tuition for online courses, yes. Now, Plaintiff made no such allegation in his complaint. It's not here. Right. So- So the D.C. Circuit case doesn't apply. More importantly, Your Honor, it doesn't apply because it wasn't applying New York law. And the New York courts have been very clear about what New York law is in terms of enforcing the implied contract between a university and its students. And here, there is no breach. LIU continued the instruction. Mr. Hoffman got credit towards his LIU degree. And that's what he paid his tuition for. Thank you, Your Honor. May it please the court, a couple points on rebuttal. As to the contention that- What are your allegations as to the damages your client suffered? The allegations as it relates to the damages in this case is a prorated refund of the market differential between the price of the on-campus education paid for and the online education provided for during the portion of the semester in which online education was given to students. So the latter- What do you mean market differential? What does that mean? And that can be discerned through objective evidence- Such as? Such as oftentimes in these types of cases, a market analysis through a conjoined analysis or maybe an objective method through a donna congression approach would be appropriate in those circumstances. But no matter what, they can be done objectively. And so they don't run afoul of the educational malpractice doctrine. I don't see any plausible allegations to that effect in your complaint. So, for example, some students might have strongly objected to remote learning. Some might have mildly objected. Some might have preferred it because they could stay home and instead of spending an hour and a half each way to LIU, spent more time in reading, writing, and thinking. So I don't understand how you can have any kind of common measure of damages across a group that could have, by definition, personal idiosyncratic reactions to online education. I see that my time has run. Can I answer your question? Yeah, sure. Okay. In response to- We'll let you do that. In response to your question, Your Honor, that is a highly factual question that needs to be answered and answered on another day when it comes to class certification. But even- We don't free you. Even if students, even if one student disagreed and another mildly agreed and the other one loved it, it wouldn't be relevant to the breach of contract claims here. It certainly would doom any class action, right? No, not necessarily, Your Honor, because the damages would be computed the same way. The market value for on campus minus the market value for online. They would all be computed the same way despite what any individual person might feel. How are we thinking about this? This is curious. If LIU said we have two options for this course, you can take it in person and you pay the normal tuition rate of X dollars per credit, but you can also take it online and get a discount. That would be one thing. But if you're going to try and assess the market value by going out and saying, well, you can get online from the University of Phoenix and they charge a lot less than LIU, then you have to compare the University of Phoenix better. Or maybe you can get an online course from Harvard and they actually charge more than LIU in person tuition for the Harvard online version of the course. This strikes me as a rather quixotic enterprise to try to value in the abstract as opposed to by what LIU charges for its instruction. What is the hypothetical market value of online instruction that LIU never actually offered except in this emergency situation? Right, Your Honor, and that's a question that's to be answered. We do plausibly allege that it can be done. Well, it's down the road anyway, I suppose, if you ever get there to damages calculations or class certification or other such issues. Right, right, exactly. I'm out of time. You are. Thank you very much. Court is adjourned. Thank you.